*JOSEPH SPIEDEL GROCERY CO. v. H. S. ARMSTRONG ET AL.

JUDGMENTS RENDERED ON LABOR DAY ARE VOID.

> The provision of the act of April 18, 1893, that the "first Monday in September of each and every year shall be known as Labor Day, and for all purposes whatever be considered as the first day of the week," is to be construed in connection with the declaration in the title that "such day is to be observed as a holiday;" and acts of pleasure, amusement and recreation may be lawfully indulged in on such day, though prohibited on Sundays; but a judgment rendered, or execution awarded by a court on such day, though by confession, whether regarded purely as a holiday or as a Sunday, is absolutely void.

ERROR to the Court of Common Pleas of Belmont county.

LAUBIE, J.

This is a proceeding in error to reverse the judgments of the court of common pleas and the probate court of this county in proceeding begun in the probate court for the distribution of a fund in the hands of an assignee for the benefit of creditors wherein the matter in dispute was as to the priority of lien upon the fund.

As appears from the record, the defendants other than Armstrong, the assignee, had recovered against the assignors, Jones and Grim, certain judgments by confession before a justice of the peace on the first Monday of September, 1893, known as "Labor Day;" and that executions were awarded and issued by the justice on that day and were levied upon the property in question.

A short time subsequent thereto, the plaintiff obtained a judgment before the same justice against Jones and Grim, and caused an execution to issue thereon, which came to the hands of the same constable who levied the executions in the other cases, and it was levied upon the same property. Soon thereafter, Jones and Grim made a general assignment to Armstrong for the benefit of their creditors. Thereupon an arrangement was made between the constable, the judgment creditors and the assignee, that the assignee should take the property —which was all personal—and convert it into money, and that the liens of the parties should be transferred to the fund thus produced, and to be payable out of that fund, if those liens were held to be valid.

The property was sold by the assignee and the money is in his hands for distribution.

The plaintiff claims that the defendants' judgments, having been rendered on Labor Day, and the executions awarded upon that day, are void, and that his subsequent judgment and execution should prevail over them.

The probate court held against this claim of plaintiff; the case was taken on error to the court of common pleas, and was there affirmed, and the plaintiff prosecutes this proceeding to have both judgments reversed; and the only question made is whether or not these judgments are void by reason of having been rendered upon Labor Day. They were rendered by confession, but we do not

---

*This judgment in this case was affirmed by the Supreme Court, on this opinion, 53 O. S., 657.

Spiedel Grocery Co. v. Armstrong et al.

understand that that will in any manner affect or change the question in the case, or its results.

The statute provides that any person may appear before a justice of the peace and confess an indebtedness to another, and thereupon the justice shall render judgment against such party, and in favor of the persons in whose favor · the confession is made. So that as to the rendition of the judgment, and the awarding of execution thereon, it is not different from an ordinary civil action, in principle, and the matter is therefore not affected by the manner in which the judgments were obtained.

The Labor Day statute (so-called), as amended April 18, 1893, 90 O. L , 194, is as follows:

"An act to amend sec. 1 of an act entitled ' An act to provide for the observance of the first Monday in September, of each and every year, as a holiday, "passed April 28, 1890."

" Section 1. Be it enacted by the general assembly of the state of Ohio, that sec. I, of an act of the general assembly, passed April 28, 1890, entitled ' An act to provide for the observance of the first Monday in September of each and every year as a holiday,' be amended so as to read as follows:

" Section 1. The first Monday in September in each and every year shall be known as ' Labor Day,' and for all purposes whatever be considered as the first day of the week.

"Section 2. That said original sec. 1, of said act passed April 28, 1890, is hereby repealed.

" Section 3. This act shall take effect and be in force from and after its passage."

The claim of the plaintiff is that this statute makes Labor Day the first day of the week or Sunday, and that a judgment rendered upon such a day is absolutely void.

On the other hand, it is claimed by the defendants in error that it was not designed or intended by the legislature to make such day as Sunday, but that it was designed simply to make it a holiday. `They claim that that should be the interpretation given to the statute, and that judgments rendered upon a holiday are not void.

It will appear that the statute is peculiar in this, that the term "holiday" is used only in the title of the act. So far as the body of the act is concerned, it seems to designate the day as a first day of the week, a Sunday. Indeed, in that regard, an examination of the statutes, in reference to holidays, will show that in neither of them, as originally passed, is the word "holiday" named in the body of the act, and the intention that the day named shall be a holiday, is to be derived solely from the title.

In the original act of April 28, 1890, 87 O. L., 355, we find another peculiarity in the body of the act itself, and that is that such day shall be considered the first day of the week for all purposes except purposes in relation to negotiable paper. So, that, as to such purposes, it could not be regarded as a Sunday, which was directly the opposite of the general statute in reference to holidays, because that provided that the day named as a holiday should be regarded for all purposes of presentation for payment, etc., of negotiable paper as the first day of the week.

Section 3177, Rev. Stat., as codified, embraced all other legal holidays, and that section was amended by the same general assembly that passed the amendatory act in question, and at the same session, so as to specially include the first Monday of September, or Labor Day, and shortly before the passage of such amendatory act.

Such sec. 3177, as amended March 28, 1893, 90 O. L., 129, is as follows:

" Section 3177. The following days, namely, the first day of January, the fourth day of July, the twenty-fifth day of December, the twenty-second day of February, the thirtieth day of May, the first Monday in September, and any day appointed and recommended by the governor of the state or the president of the United States as a day of fast or thanksgiving, shall for all purposes whatsoever of presentment for payment, of acceptance, and the protesting or giving of notice of non-acceptance or of non-payment of all such instruments, be considered as the first day of the week; but if the first day of January, the fourth day of July, the

twenty-fifth day of December, the twenty-second day of February, or the thirtieth day of May, be the first day of the week, the succeeding Monday shall for the same purpose be considered as the first day of the week."

Thus, this general act makes all holidays, including Labor Day itself, a first day of the week, or Sunday, merely in regard to the presentment for payment or acceptance and the protesting or the giving of notice of non-acceptance and non-payment of negotiable paper, without in terms repealing the Labor Day statute of April 28, 1890. And that statute as amended, without in terms repealing the provision as to Labor Day in said sec. 3177, provides that the first Monday of September shall be regarded as the first day of the week for all purposes whatsoever; and this change indicates an intention upon the part of the legislature to prohibit all business transactions, legal acts and other matters and things which are prohibited of performance on Sunday, either by the written or unwritten law; and which would be controlling if there was nothing in the act qualifying such intention.

If we consider the rules for the interpretation of statutes, however, laid down and defined by the court of last resort in this state, we will be enabled to determine whether this provision, broad and sweeping, that the first Monday of September shall for all purposes whatsoever be regarded as the first day of the week, is to receive a literal interpretation, and be held to mean just what the words imply. The words are plain, unambiguous and absolute; and considered alone, need no interpretation; but considered in connection with other parts of the act, under the guidance of the rules referred to, their otherwise plain meaning may be modified.

In *Bridge Co.* v. *Bowman*, 41 O. S., 52, it is held:

"If the language used by the legislature in a statute is precise and unambiguous, we conceive it to be our duty to interpret the words in their natural and ordinary sense, although the result may conflict with our ideas of public policy."

In *Patton* v. *Sheriff*, 2 O., 397, it is held that "although a court may find in the act some things which are not consistent with their ideas of policy or of justice, yet it would be highly improper to distort the language or the evident meaning in such manner as to give the statute a construction consistent with their own feelings, when such construction would manifestly defeat the intention of the legislature."

In *McCormick* v. *Alexander*, Ibid, 74, it is held:

"Where the intention is manifest, but that intention is in part defeated by the use of some particular word or phrase, the court will look to the intention rather than the words."

In *Board of Education* v. *Same*, 46 O. S., 599, it was held to be the rule that general words used in a statute should be limited to the object to which it is apparent the legislature intended to imply them, and that "those statutes which comprehended all things in the letter they (the courts) have expounded to extend but to *some things.*"

"A thing within the letter is not within the statute, unless within its intention." 42 O. S., 209, 210.

In *Moore* v. *Given*, 39 O. S., 633, it is held:

"That the law does not require vain, absurd or impossible things of men, is one of its favorite maxims; and it is the plain duty of the court, in the interpretation of a statute, unless restrained by the rigid and inflexible letter of it, to lean most strongly to that view which will avoid absurd consequences, injustice and even great inconvenience; for none of these can be presumed to have been within the legislative intent."

In *Stone* v. *Elliot*, 11 O. S., 258, it was held:

"In acts of assembly as well as in common parlance, the word 'all' is a general rather than a universal term, and is to be understood in one sense or the other, according to the demands of sound reason."

Spiedel Grocery Co. v. Armstrong et al.

In *State* v. *Pugh*, 43 O. S., 113, it was held:

"The title is framed in the same manner as the bill, and is sanctioned by the vote of both branches of legislature; we may therefore consider it as explanatory of the object of the law."

Now, while the words in the body of the act are plain and unambiguous, and while we ought not to distort them from their true meaning by any preconceived notions of ours as to the wisdom of making every first day of September a Sunday, or what our convictions are as to the sanctity of such day, we should construe them with reference to the apparent object and intent of the legislature. It has been well said that he who considers the mere letter of a law goes but skin deep into its meaning. And yet if it were not for the title, it would be manifest, we think, that there could be no construction of this act—it would be too plain for construction. But when we turn to the title, we find an inconsistency with the idea that the day is to be regarded as a Sunday for all purposes, in that it is there set apart to be observed as a holiday.

Such inconsistency will be manifest by ascertaining what is meant by a holiday. The legislature treats the word as a word which has some definite signification, understood by them, and understood in law. Holiday has two meanings or significations. The first signification is: "A consecrated day; a religious anniversary; a day set apart for commemorating some important event in history." The second is: "A day of exemption from labor; a day of amusement, joy and gaiety."

"A holiday is a secular day upon which the usual obligations of labor, attendance upon courts, and attention to notices and services, and service in legal proceedings are, by law, remitted. In a general sense Sunday is a holiday, but, as the word is usually employed, it does not include Sundays; thus Sundays and holidays is a common and correct expression." 9 A. & E. E. L., 419. A holiday is a day "during which courts do not transact any business." 5 A. & E. E. L., 85; 1 Bou., L. D., 477; 3 Chitty's Genl. Pract., 104; W. Jones, 156; *Lampe* v. *Manning*, 38 Wis., 673; *Hemmons* v. *Bentley*, 32 Mich., 89.

We can exclude from our consideration, we think, the first signification. The use of the word to signify a consecrated day, or a religious anniversary, is said to be rare; and when we regard the fact that church and state are separate in this state, and that it has been judicially declared that the power of the legislature to legislate in regard to such matters is temporal and not spiritual, and exists as to civil matters only as contradistinguished from religious, it leaves no doubt of the propriety of such exclusion.

While the principle so declared is doubtless correct, still it cannot be denied that the acts which prohibit common labor, etc., upon the first day of the week grew out of, and were largely founded upon the general sentiment of the people, which regards that day as a religious anniversary. But however that may be, this court, following the decisions of the Supreme Court, in passing upon acts of this character must regard the power of the legislature as extending to temporal affairs, and not spiritual. Therefore, the words in the act "first day of the week," must be presumed to refer to a day as a day of rest, and not as a day of religion; especially when construed in connection with the declaration in the title that such day is to be observed as a holiday. We may therefore exclude the first signification given as a meaning of the term "holiday," as not having been within the intention of the legislature at the time of the passage of the act.

That brings us to the second signification: "A day of exemption from labor; a day of amusement; joy, gaiety."

In that view of it, then, the legislature was in this statute providing that the first Monday in September should be a day of exemption from labor; a day of amusement and recreation; and if there be any inconsistency with that idea or that intention, in any general words in the act, those general words should be restrained to that intention. The phrase in the statute "for all purposes,"

should be held simply as a general phrase, and not universal, in considering the object and intention of the legislature.

Now, in that view of it, that the legislature designed and intended a day of amusement, pleasure and recreation, it is evident that acts of that character, which are illegal if done upon the first day of the week, are not designed to be prohibited; but the usual and ordinary avocations and business of life only, whether they are such as are prohibited on Sundays, or that are remitted of performance on legal holidays.

Many things are prohibited by our statutes from being done on the first day of the week. They prohibit shows, the selling of liquor, the opening of places of amusement, hunting, shooting, fishing, common labor, ball playing, ten-pins and other games of like kind; all of which, except common labor and liquor selling, are properly indulged in upon a holiday.

It is but reasonable, therefore, to suppose that the legislature, in making a holiday, meant that those acts which are prohibited on Sundays in the way of amusement, joy or gaiety, should not be prohibited upon such holiday.

This, however, is a modification of the express words in the body of the act, and the construction must be, at least, that it prohibits everything that is prohibited to be done on Sunday, whether by the written law, or by virtue of the common law, as in force in the state, except acts of amusement, pleasure and recreation. So that whether we give it this limited construction, or the broad construction claimed, is after all immaterial; because, in any event, it excludes the performance of all the usual avocations and ordinary business of life, and acts that are inhibited either by statute, or by the common law, from being performed upon Sunday, other than such as relate to amusement and recreation.

While there is no statutory law prohibiting the courts of this state from rendering judgment or awarding execution upon Sunday, yet the common law is in force in that respect in this state, and that does inhibit courts of justice from the performance of such acts upon that day.

"At common law, and since the earliest times, Sunday, it seems, has been considered *dies non juridicus*, and all judicial proceedings on that day have, therefore, been held void." 24 A. & E. of L., 574; 5 Ib., 85. This applies, however, to judicial acts as such—ministerial acts might be done on Sunday, as well as on any other day. Ib. In the United States, however, the observance of Sunday is generally regulated by statute, and ministerial as well as judicial acts, and all worldly business, are prohibited as a general thing.

It is said by Okey, J., in the case of *Hastings* v. *Columbus*, 42 O. S., 588, 589:

"Anciently at common law, courts were authorized to and did sit on Sunday, for the rendition of judgments and for all other purposes, precisely the same as on other days of the week, and process of every sort might be as lawfully executed; and work, labor and business of every kind might be as lawfully done. *Bloom* v. *Richards*, 2 O. S., 387; *McGatrick* v. *Wason*, 4 O. S., 566, on that day as on any other."

"By force of the adoption by several Saxon kings, and general acquiescence for centuries in such adoption, the canon promulgated A. D., 517, acquired the force of, and became in truth common law, in a single particular, namely, that process awarded, or a judgment rendered by a court on Sunday was void; and that is the law wherever the common law prevails, except as modified by statute."

In so far as courts are concerned, therefore, it seems that they can sit for all purposes on Sunday, save to render judgment and award process, and accordingly it has been held by the Supreme Court that the reception of a verdict on Sunday is not illegal; neither is a ministerial act by an officer (other than an arrest in civil cases, which is prohibited by statute), in the ordinary course of official duty, although such acts are, I think, prohibited of performance on a legal holiday, which is said to be one made by positive (statutory) law, and

which is, *ex vi termini*, *dies non juridicus*, as we have seen, in the fullest sense of the term. On such a day courts have no jurisdiction over parties or subjects (*Lampe* v. *Manning*, *supra*), and parties canot confer it by voluntary appearance.

It may be, therefore, that making this day a legal holiday, in and of itself, would prohibit courts of justice from sitting to transact any business. While I can see no reason why officers, jurors, attorneys, witnesses and parties litigant are not exempt from attendance on courts on such a day, as well as laborers and business men from their usual avocations, it is sufficient for us to hold in this case that a judgment rendered on Sunday is void. Upon any consideration of the case we find that the court of common pleas and the probate court erred, and the judgments will have to be reversed, and the case certified back to the probate court for the enforcement of this judgment.

This will be at the costs of the creditors and not at the costs of the assignee.

*Gallagher & Woodbridge*, for plaintiff in error.

*Tallman & Armstrong* and *D. W. Cooper*, for defendant in error.